UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KIRK ERNEST ROOT,

        **Plaintiff,**

v.                                    Case No: 6:17-cv-2155-Orl-28GJK

NILO SALAZAR,
        **Defendant.**

## ORDER

Plaintiff Kirk Root brought the instant action alleging that Defendant Nilo Salazar violated two provisions of the Fair Housing Act—42 U.S.C. §§ 3604(f)(1) and 3604(c)—and §§ 57.48 and 57.49 of the Orlando City Code. Root contends that Salazar made discriminatory statements indicating his intention to refuse tenancy to Root because of Root's disability and ultimately denied Root tenancy because of the disability. (Doc. 1). Root now moves for summary judgment. (Doc. 30).[1] As set forth below, Root's motion is denied on his claims under 42 U.S.C. § 3604(f)(1) and Orlando City Code § 57.48 but is granted on his claims under 42 U.S.C. § 3604(c) and Orlando City Code § 57.49.

**I.   Background**

On January 7, 2017, Root texted Salazar to inquire about renting one of the units in a duplex that Salazar owns in Orlando, Florida. (Ex. 1 to Root Decl.[2]). Root sought to take the place of the roommate of the unit's tenant. (Root Dep. at 32). Salazar responded to the text and emailed Root a rental application. (Salazar Dep. at 43). The application listed

---

[1] Salazar filed a Response (Doc. 34) to the motion, and Root filed a Reply (Doc. 35).
[2] Root's declaration, Salazar's deposition, and other exhibits to Root's motion are filed at Docs. 30-1 through 30-5. Root's deposition is filed at Doc. 34-1. Citations are to deposition page numbers, not electronic record page numbers.

rental requirements including rent-to-income ratio, present and past rental history, and references. (Id. at 13–14).

Within a few days, a friend of Root's, Tom Scala, contacted Salazar on Root's behalf and disclosed to Salazar that Root uses a wheelchair and occasionally crutches due to a mobility impairment.[3] (Id. at 53–54, 64–65). Salazar never met Root or spoke with him directly. (Id. at 55–56). After Salazar's conversation with Scala, Salazar researched the Fair Housing Act, Housing and Urban Development requirements, and Root himself. (Id. at 54–59).

In researching Root online, Salazar discovered a Go Fund Me website that Root set up in December 2016 to ask for spare change. (Id. at 54). He also found a second Go Fund Me website that Root set up on January 8—one day after Root first texted Salazar—to ask for funds to help him pay the security deposit for a new apartment. (Id. at 61; Root Dep. at 43). Salazar never told Root that he had found these webpages. (Salazar Dep. at 61–62).

On January 12, Salazar sent Root a text message stating:

After the conversation this morning I understand better the situation. It is unfortunately [sic], but I have to say the property that I will have available does not provide the accommodations suggested by the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY. When you read the section under: ACCESSIBILITY (DESIGN AND CONSTRUCTION) REQUIREMENTS FOR COVERED MULTIFAMILY DWELLINGS UNDER THE FAIR HOUSING ACT You [sic] realize my 1959 building does not comply with the guidelines establish [sic] on March 6, 1991. Renting that building to a handicap person with challenging mobility motor skills will be doing a dishonesty to that person. Furthermore, allowing the possibility of an accident that will further limit the person [sic] mobility will be a negligent act on my behalf.

---

[3] Root has cerebral palsy. (Root Decl. at 1).

2

> I am sorry but I want all of us to be safe and avoid accidents. I have to say no. There are plenty [sic] properties out there that were built after 1991 that comply with the Fair Housing Act.

(Ex. 1 to Root Decl.). Salazar later repeated these and similar statements to an employee of the Orange County Citizen Resource and Outreach Office and to a City of Orlando discrimination investigator. (Ex. B to Gillespie Decl., at 3–5). Salazar did not mention finding the Go Fund Me webpages to these two individuals. (Salazar Dep. at 61–62).

On January 17, Salazar was informed that Root had been staying at the duplex with the then-current tenant for several weeks without signing a lease. (Id. at 70). Salazar then changed the locks to the duplex, and Root's personal belongings were removed and returned to him. (Id. at 73–74; Root Dep. at 63–64). The tenant remained in the duplex without a roommate for the remainder of the lease term. (Salazar Dep. at 32). Root filed the present action on December 18, 2017.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty

3

Lobby, Inc., 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251–52).

III. **Discussion**

A. **42 U.S.C. § 3604(f)(1) and Orlando City Code § 57.48**

Root claims that Salazar violated 42 U.S.C. § 3604(f)(1) and Orlando City Code § 57.48(1) by refusing to rent to Root because of his handicap.[4] Section 3604(f)(1) provides that it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to a buyer or renter because of a handicap of . . . that buyer or renter . . . ." Claims of discrimination under the FHA may be brought under theories of (1) disparate treatment, (2) disparate impact, or (3) failure to accommodate. See, e.g., Schwarz v. City of Treasure Island, 544 F.3d 1201, 1216-18 (11th Cir. 2008). Disparate treatment, as Root alleges here, may be proved by either direct or circumstantial evidence. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977). Viewing the evidence in the light most favorable to Salazar—the nonmoving party—Root has failed to establish that there are no genuine issues of material fact as to this claim based on either direct or circumstantial evidence.

On this record, Root has not established that his disability was the "but for" cause of denying his tenancy; and, alternatively, Salazar has presented evidence that, even if

---

[4] 42 U.S.C. § 3604(f)(1) and Orlando City Code § 57.48 "are substantially identical, and therefore the same legal analysis applies to each." Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277, 1285 (11th Cir. 2014). Therefore, this Order collectively refers to them as "§ 3604(f)(1)."

4

disability was a motivating factor, Salazar would have made the same decision to reject Root without consideration of Root's handicap.[5] As explained below, taken in the light most favorable to Salazar, the record evidence reveals genuine disputes of material fact that preclude summary judgment.

Salazar describes his rental application, which Root acknowledges receiving, as clearly stating financial requirements, including a 30% rent-to-income ratio. It is undisputed that Root set up several Go Fund Me websites to ask for money around the time he approached Salazar about renting the duplex. The title of the second site, created one day after Root first contacted Salazar, is "Kirk's Deposit for His New Apartment." Salazar attests that he discovered these sites on January 12, 2017, the day that he texted Root to reject his tenancy. (Salazar Dep. at 56). Salazar also stated in his deposition that the Go Fund Me pages disclosed that Root was receiving Social Security Disability, which led Salazar to research online the guideline monetary amounts that the government provides. (Id. at 54). At one point in his deposition, Root testified that in January 2017 he was receiving $750 per month, (Root Dep. at 41) in Social Security Disability benefits; later, he stated $730 per month, (id. at 74). Regardless of which amount is accurate, Root does not meet the 30% rent-to-income requirement for the duplex—which rented for $875 per month—using Social Security income, and he has not presented evidence of another source of income. Even if Root were only required to pay $430 per month—the share of

---

[5] There may be an open question as to whether the "motivating factor" or the "but-for" test applies to FHA claims after the Supreme Court's decision in Gross v. FBL Financial Services, 557 U.S. 167 (2009). See, e.g., Mhany Mgmt. v. Cty. of Nassau, 819 F.3d 581 (2d Cir. 2016). However, it is not necessary for the Court to resolve this question in order to rule on Root's motion because Root has failed to meet his summary judgment burden under either standard.

the rent that Root says the prior roommate was paying—he would not meet the 30% requirement.

There are also evidentiary disputes as to whether Salazar's rental application required current and recent rental history with landlord references and other financial information, whether Salazar enforced these requirements, whether Root was able to meet the requirements, and whether the rental application was ever turned in to Salazar. Root posits that these disputes are irrelevant because Salazar denied his tenancy before receiving the application. But Salazar testified in his deposition that before turning Root away he knew some of this information from Root's text messages and his online research, (Salazar Dep. at 56), and these disputes of fact cannot be resolved on summary judgment. This further adds to the dispute over why Root was truly denied tenancy.

Root claims that he was qualified to live at the duplex, but he fails to explain or present evidence as to how he was qualified. Instead, he lists reasons why qualification should not matter. The Court is not persuaded. Root points to evidence that the roommates were free to decide how to divide the rent obligation between themselves, with either being responsible for the full amount. Therefore, Root suggests, Salazar had no right to require Root to meet the minimum requirements to lease the unit because Salazar could always seek the full amount from the other tenant. This proposition creates an unacceptable scenario for landlords. If the Court agreed with Root, it would be telling landlords that they cannot reject an unqualified lease applicant as long as they have one possible avenue to collect the rent. Under this suggestion, for example, if the sole qualified tenant moved out, the landlord would be forced to evict the remaining, unqualified tenant because he would be unable to pay the full rent on his own. "[T]he Amendments [to the

FHA] were not intended to place a straightjacket on landlords or unnecessarily to chill their speech. . . . Significantly, the Amendments were not intended to 'prevent a landlord from determining that a family is otherwise qualified before agreeing to rent to them.'" Soules v. U.S. Dep't of Housing & Urban Dev., 967 F.2d 817, 821 (2d Cir. 1992) (citing 134 Cong. Rec. H4681 (daily ed. June 23, 1988) (Remarks by Representative Synar)).

Root does correctly note that Salazar never mentioned Root's lack of qualifications as a reason for denying him tenancy when he texted Root the rejection or when he spoke with the City of Orlando investigator. On both occasions, Salazar only mentioned Root's handicap. However, in his deposition, Salazar gave reasons for this nondisclosure. Salazar explained that he did not want to make Root "feel bad or diminish him" so he focused "on the fact that the building didn't meet the standard." (Salazar Dep. at 61–62). Thus, Salazar's failure to mention qualifications does not warrant granting Root's motion for summary judgment. The motion must be denied as to the § 3604(f)(1) and § 57.48 claims because there are genuine issues of material fact.

**B.    42 U.S.C. § 3604(c) and Orlando City Code § 57.49[6]**

Root also claims that Salazar violated 42 U.S.C. § 3604(c) and Orlando City Code § 57.49 by making statements indicating a preference against renting to Root because of his handicap.[7] Even when the evidence is viewed in the light most favorable to Salazar,

---

[6] Salazar did not address this issue in his Response, but the Court is nonetheless required to fully consider the issue. See U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004).

[7] 42 U.S.C. § 3604(c) and the Orlando City Code § 57.49 "are substantially identical, and therefore the same legal analysis applies to each." Bhogaita, 765 F.3d at 1285. Accordingly, this Order collectively refers to them as "§ 3604(c)."

7

Root has established that there is no genuine issue of material fact as to this claim, and therefore Root is entitled to judgment as a matter of law.

Section 3604(c) makes it unlawful "[t]o make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." The HUD regulations interpret this provision to include "[e]xpressing to . . . prospective . . . renters or any other persons a preference for or limitation on any purchaser or renter because of race, color, religion, sex, handicap, familial status, or national origin of such persons." 24 C.F.R. § 100.75(c)(2) (2019). Courts have found that, depending on the context, this provision may cover actions such as asking an agent about prospective purchasers' race,[8] accosting a disabled tenant about her need for assistance in entering a building,[9] and inquiring into the ages of a prospective tenant's children.[10]

To establish this claim, Root must prove that Salazar (1) "made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination . . . on the basis of [handicap]." White v. U.S. Dep't of Hous. & Urban Dev., 475 F.3d 898, 904 (7th Cir. 2007). The inquiry on the third prong is "whether the alleged statement would suggest to an 'ordinary listener' that a person with a particular [disability] is preferred or disfavored for the housing in question." Id. at 905–06.

---

[8] Secretary, U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell, 908 F.2d 864, 872 (11th Cir. 1990).
[9] Haynes v. Wilder Corp., 721 F. Supp. 2d 1218, 1227 (M.D. Fla. 2010).
[10] Soules, 967 F.2d at 824.

Salazar does not deny making statements such as "Renting that building to a handicap person with challenging mobility motor skills will be doing a dishonesty to that person. Furthermore, allowing the possibility of an accident that will further limit the person [sic] mobility will be a negligent act on my behalf. I am sorry but I want all of us to be safe and avoid accidents. I have to say no." Salazar also does not deny repeating similar statements to an employee of the Orange County Citizen Resource and Outreach Office and an Orlando City discrimination investigator. These are (1) statements made by Salazar; (2) with respect to the rental of a dwelling; and (3) indicating a preference not to rent to persons with mobility impairments.

An ordinary listener, as well as a reasonable jury, could only understand Salazar's statements to mean that Salazar had a preference against renting the unit to a person with a mobility handicap. Whether Salazar ultimately denied Root's tenancy on this basis—the issue discussed in the previous section—is not relevant to whether Salazar made these statements or to how the statements would have been perceived. Therefore, Root is entitled to summary judgment on liability under § 3604(c).

## IV. Conclusion

It is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 30) is **DENIED IN PART** and **GRANTED IN PART**. The motion is denied as to Count I and is granted as to Count II.

**DONE** and **ORDERED** in Orlando, Florida, on August 27, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

9